M. L. Rose Co. v. Commissioner.
M. L. Rose Co. v. Commissioner
Docket Nos. 30748, 34081.
United States Tax Court
1954 Tax Ct. Memo LEXIS 277; 13 T.C.M. (CCH) 213; T.C.M. (RIA) 54077; March 15, 1954
Cyrus B. King, Esq., for the petitioner. Leonard Allen Marcussen, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner has determined and made claim for, under section 272(e), I.R.C., the following deficiencies in taxes and penalties: Income Tax
5% Penalty
50% Penalty
Year
Deficiency
Sec. 293(a)
Sec. 293(b) *
1944
$1,670.43
$ 83.52
$ 835.21
1945
2,141.18
107.06
1,070.59
1947
2,142.89
Declared Value Excess Profits Tax
1944
$1,761.99
$ 88.10
$ 880.99
1945
1,223.61
61.18
611.80
*278 Excess Profits Tax
5% Penalty
25% Penalty **
50% Penalty
Year
Deficiency
Sec. 293(a)
Sec. 291(a)
Sec. 293(b) *
1944
$ 6,282.17
$314.11
$1,570.54
$3,141.08
Totals
$15,222.27
$653.97
$1,570.54
$6,539.67
By amendments to his answer, under the provisions of section 272(e), the respondent has made claim for increase in the deficiency in income tax for 1944 which may result from a determination of the Court which reduces the deficiency in excess profits tax for 1944, and claims for 50 per cent additions to deficiencies under section 293(b) in income tax, declared value excess profits tax, and excess profits tax for 1944, and to deficiencies in income tax and declared value excess profits tax for 1945. The petitioner does not contest the determination of the Commissioner under section 291(a), I.R.C., imposing a penalty of 25 per cent for failure to file an excess profits tax return *279 for 1944 within the time prescribed by law; no issue is presented in the petition contesting the imposition of the 25 per cent penalty. The Commissioner has conceded by stipulation that his determination that petitioner, in 1944, received a commission in the amount of $125 is excessive to the extent of $75. The petitioner and the Commissioner have agreed that the commission (from Minnie Green) received in 1944 amounted to $50, only, which amount was not included in income for 1944, and which is properly includible in 1944 income. Effect will be given to this stipulation under Rule 50. The questions to be decided are as follows: A. Commissions and fees: (1) Whether an alleged commission of $4,625, involved in a transaction relating to the Davenport Hotel, is includible in income for 1944. (2) Whether an alleged commission of $3,125, involved in a transaction relating to the Palomar Hotel, is includible in income for 1944. (3) Whether an alleged escrow fee of $1,750, allegedly received from H. M. Haslett in connection with the sale of the Maryland Hotel, is includible in income for 1944. (4) Whether an alleged commission of $2,332.50 involved in the sale of furniture and fixtures *280 of the McAlpin Hotel, is includible in income for 1945. (5) Whether the sum of $380 represents a part of commissions received in 1945 from Charlotte Russell, and is, therefore, includible in income for 1945. B. Deductions: Whether petitioner is entitled to business expense deductions totalling $1,680.69 for 1944 as follows (in addition to deductions allowed and conceded at the trial by the respondent): (1) Christmas gifts
$105.00
(2) Auto expense
325.69
(3) Business travel and promotion
810.00
(4) Public stenographers
440.00 Whether petitioner is entitled to business expense deductions totaling $3,263.95 for 1945 (in addition to deductions allowed and conceded at the trial by the respondent) as follows: (1) Boat
$1,334.00
(2) Travel expenses
1,000.00
(3) Auto accident
407.00
(4) Christmas gifts
359.50
(5) Refund on cancellation of lease
100.00
(6) Replacing glass
63.45
(7) Attorney's fees
177.00
C. Bad debt loss: Whether petitioner sustained a loss from a worthless indebtedness in 1947 in the amount of $10,000. D. Penalties: Whether any part of the deficiencies in taxes for 1944 and 1945 is due to fraud with intent to evade *281 tax under section 293(b), I.R.C.
Findings of Fact The stipulated facts are found as facts. The stipulations are incorporated herein by this reference. Petitioner is a California corporation having its place of business in San Francisco. Its corporation income tax and declared value excess profits tax returns for the taxable years 1944, 1945, and 1947 were filed with the collector for the first district of California. Petitioner purported to file its returns on the cash basis for calendar years. No excess profits tax return was filed for 1944. The petitioner's business is real estate and insurance. M. L. Rose was in complete charge of petitioner's business operations during the taxable years. He was the manager and the only employee of petitioner. He was not an officer of petitioner during the taxable years. M. L. Rose is the husband of the chief stockholder of petitioner, Ella Rose. During the taxable years she owned all of the stock of petitioner except qualifying shares. M. L. Rose is a real estate broker, an insurance agent, and an escrow agent, and has had more than 30 years' experience in such capacities. During the taxable years, petitioner *282 did not have any bank account. Its disbursements were made by cash or by cashier's checks purchased from banks. During the taxable years, petitioner did not maintain a double entry set of books; it did not maintain an adequate or a complete single entry set of books. Such accounting records as were kept for petitioner during the taxable years were incomplete and were inadequate to accurately reflect all of petitioner's gross income, its expenses and expenditures, all of its business transactions, and its net income. Informal entries were made in a memorandum or notebook of receipts and expenses, or disbursements. Very brief descriptions of the items noted were made. Such descriptions were incomplete, for the most part, and required supplemental explanations. M. L. Rose made entries in the notebook of commissions. His wife made entries in the notebook of expenses. She has had no training in bookkeeping or accounting. She kept such bills and statements as were given to her in envelopes; the envelopes were kept in a drawer; and about once a year they were more or less gotten together and written up for a Mr. Bowdish who prepared petitioner's tax returns for certain years. A. Commissions *283 and Fees Respondent, in auditing petitioner's records for 1944 and 1945, determined that petitioner had received commissions and fees during those years which it had not reported as income in its Federal tax returns for such years. His determination was as follows: Transaction
Amount
1944
Davenport Transaction
$4,625.00
Palomar Transaction
3,125.00
Maryland Transaction
1,750.00
Total
9,500.00
1945
McAlpin Transaction
$2,332.50
Russell Transaction
380.00
Total
$2,712.50 Each of these items will be discussed separately. (1) During the year 1944, petitioner handled the sale of the Davenport Hotel, owned by Stuart Greenberg, to Mrs. Clementine Buckman. (This transaction will hereinafter be referred to as the Davenport transaction). The contract price for the property was $135,000 and $30,000 was to be paid in cash. Petitioner was to receive a commission of $4,625 from the seller, upon completion of the sale. Twenty thousand dollars was paid by Mrs. Buckman at the time that the contract was entered into. Settlement was to be made after the remaining $10,000 was paid. Mrs. Buckman could not raise the $10,000 in its entirety and attempts made by *284 her and by M. L. Rose, on her behalf, to have the seller agree to settle for a lesser amount of cash were to no avail. She could raise about $4,500. The seller agreed that he would allow settlement to go through if the purchaser would undertake to pay petitioner its commission due from the transaction. This was agreed upon. In order to fulfill the terms of the contract, petitioner advanced about $5,500 which, together with the $4,500 that Mrs. Buckman had raised, were deposited in the escrow account. Petitioner was paid $4,625 from this account and the remainder was paid to the seller. Petitioner did not include this money as income for the taxable year 1944, since it merely looked upon it as a return of its own money. The purchaser had agreed to pay petitioner the commission within a short time. In November 1952, she still had not paid it, although she recognized that she owed this amount to petitioner. Petitioner did not receive a commission in the amount of $4,625 during the taxable year 1944 and respondent erred in including such amount in petitioner's income for such year. (2) During the year 1944, petitioner handled the sale of the Palomar Hotel. (This transaction will hereinafter *285 be referred to as the Palomar transaction). Petitioner received a commission from this sale in the amount of $3,125. After the sale it was discovered that the hotel and furnishings were left by the tenant of the property in such bad condition that the buyer refused to take possession and threatened to rescind the transaction. Petitioner, in order to preserve the good will of the buyer and to enable the buyer to resell the property, made certain repairs and replacements at its own expense. The petitioner spent more than $3,700 for the repairs and replacements, which amount exceeded its commission. Petitioner resold this property in 1946 and received as its only compensation from the resale a note for $1,550 from the purchasers which it reported in its income for 1946. Petitioner did not include the commission of $3,125 in its reported income for the year 1944, nor did it claim any loss or expense deduction for the amounts expended in repairing the property during that year. Petitioner did not receive any income in 1944 from the Palomar transaction. (3) During the year 1944, petitioner acted as escrow agent in the sale of furnishings and the transfer of a lease of the Maryland *286 Hotel. (This transaction will be referred to hereinafter as the Maryland transaction). In the "Authorization for Sale" contract executed by the seller, no provision was made for the payment of a commission to the petitioner. In the note book kept by M. L. Rose in which he noted commissions received by petitioner from real estate transactions, an entry appears under July, 1944, as follows: "H. M. Haslett Maryland Hotel $1,750.00?". The seller claimed a deduction on his income tax return for 1944 of $1,750 as expenses connected with the sale. This deduction was allowed by the Commissioner upon audit of the seller's income tax return for that year. Petitioner did not include $1,750 in income in its return for 1944. Petitioner has failed to sustain its burden of proof that it did not receive a commission of $1,750 during 1944. (4) During the year 1945, petitioner handled the sale of certain furniture and fixtures in the McAlpin Hotel. Petitioner received payment of its share of the commission amounting to $2,332.50 on April 9, 1945. Petitioner did not report this amount in its income for 1945. Petitioner has failed to prove that it did not receive a commission of $2,332.50 in 1945. *287 (5) During the year 1945, petitioner received a check for a commission in the amount of $1,280 for its services for Miss Charlotte Russell. (This transaction will be referred to hereinafter as the Russell transaction). Petitioner reported $900 of the total received in its 1945 return. Miss Russell was in the hospital at the time, and M. L. Rose, petitioner's manager, paid some of her hospital bills. Petitioner has failed to prove that the commission was $900 rather than $1,280. The commission amounted to $1,280. B. Deductions 1944 Petitioner in its income and declared value excess profits tax return for 1944 claimed deductions as follows: Rent
$ 600.00
Repairs
7.00
Taxes
49.00
Contributions
105.00
Costs of operations
2,962.42
$3,723.42
In his notice of deficiency, the Commissioner disallowed the above deductions as unsubstantiated. A salary deduction of $2,900 which was claimed in the return for this year was allowed by respondent. In its petition, petitioner claimed business expense deductions in the amount of $4,019.93, made up of the $3,723.42 set forth above, and additional new deductions in the amount of $296.51. On brief and during the *288 trial respondent conceded that the following items were deductible by petitioner as ordinary and necessary business expenses during the year 1944: Rent
$ 600.00
Office telephone
214.83
Telephone answering service
60.00
Real estate license
14.00
Burglary insurance premium
8.50
Insurance broker's license
10.00
State franchise tax
25.00
Auditing service
75.00
Classified advertising
74.51
Rental of automobile
20.00
Lease transfer
25.00
Maryland Bonding Company
premium
5.00
Typewriter repairs
7.00
Stationery and supplies
47.00
Printing
7.69
Casualty loss-judgment satisfac-
tion
300.00
Total
$1,493.53
During the trial the Court found that the petitioner is entitled to deduct an additional amount of $40.80 for telephone expense. The only deductions in issue for the year 1944 are as follows: Business promotion and travel
$ 810.00
Public stenographers
440.00
Automobile expenses
325.69
Christmas gifts and expenses
105.00
$1,680.69
During 1944, petitioner spent $500 for business promotion and travel, and for automobile expenses. The petitioner has failed to prove that it expended $635.69 for the above stated purposes *289 and the respondent properly disallowed the latter amount. Petitioner spent $60 in 1944 for business Christmas gifts to employees and others. Petitioner has failed to prove that it spent more than $60 for business Christmas gifts. Petitioner, in 1944, did not employ any secretarial or clerical employees. It employed public stenographers to do the typing and stenographic work required in the conduct of its business. Petitioner spent $375 in 1944 for business stenographic work. Petitioner has failed to prove that it spent more than $375 for such business expense. 1945 In its return for 1945, petitioner took deductions (in addition to a salary deduction of $10,000, and a deduction for depreciation of $80, which respondent allowed) for business expenses in the amount of $8,222.18. (The amount in the schedule attached to the return is $8,222.18, but the figure deducted is $8,198.81, representing an error in addition.) The respondent allowed deductions totalling $2,408.75, as follows: Rent
$ 600.00
Telephone
304.54
Telephone service
60.00
Real estate license
14.00
Burglar insurance
8.00
Stenographic expense
40.00
Auto tax
13.40
Property tax
1.50
Insurance license
10.00
Franchise tax of corp.
126.00
Typewriter repair
5.00
Typing expense
500.00
Audit service
100.00
Stationery
126.31
Commission service
500.00
Total
$2,408.75
*290 Respondent in his notice of deficiency disallowed deductions in the amount of $5,813.43, as follows: Taxes
$1,234.95
Advertising and travel
1,000.00
Care fare, etc.
480.00
Gas, oil and greasing
200.00
Toll bridge fares
32.00
Garage and repair
407.00
Donations, dues and association
fees
119.98
Maryland Company
5.00
Christmas expense
359.50
D. Freidenrich
177.00
Miscellaneous
63.45
Return cancellation of lease
100.00
Examiner advertisements
227.82
E. J. Boscoe, Service and Enter-
tainment
1,334.85
Miscellaneous
36.88
Photostats
10.00
Attorney fees
25.00
Total disallowed
$5,813.43
In its petition, petitioner claimed deductions in the amount of $4,627.32. Some of the items claimed in the return for 1945 were abandoned; some new items of expense were claimed, and some items were increased in amounts, as follows: Gas, oil and grease
$ 200.00
Toll bridge fare
32.00
Garage, repairs (wreck)
407.00
Donations, dues and fees
132.30
Maryland Bond
5.00
D. Freidenrich - Attorney
177.00
Miscellaneous (glass)
63.45
Return lease cancellation
100.00
Examiner & recorder advertising
239.10
E. J. Lynch - Attorney
50.00
Trips, advertising and traveling,
business promotion
1,000.00
Car fare, outside phone, taxis
480.00
Christmas expense
359.50
E. J. Boscoe, services and enter-
tainment
$1,334.84
Miscellaneous
36.88
Photostat (forms)
10.25
Total
$4,627.32
*291 At the trial respondent conceded that of the deductions in issue expenses of $250.48 were allowable as follows: Advertising expenses
$185.23
Attorney's fee, E. J. Lynch
50.00
Photostats
10.25
Maryland bond premium
5.00
Total
$250.48
On brief petitioner abandoned claims for some of the deductions, leaving in issue as deductions claimed for 1945, the following: Entertainment - expense of a boat,
services of E. P. Boscoe
$1,334.00
Travel expenses
1,000.00
Christmas expenses
359.50
Automobile repairs, wreck
407.00
Attorney's fees, D. Freidenrich
177.00
Refund, lease cancellation
100.00
Replacing glass
63.45
Total
$3,440.95
Entertainment: During the year 1945, the daughter of M. L. Rose, petitioner's manager, Mrs. Patricia Boscoe, purchased a used, inboard motor boat. The boat was bought in her name. The purchase price of the boat was $1,250. This amount, together with money spent for repairs needed to put the boat in running condition were paid by petitioner. The boat was kept on a lake near Mrs. Boscoe's home, and at times she would take clients and customers of petitioner out on the boat to entertain them. The rest of the *292 time the boat was used by Mrs. Boscoe for personal purposes. The petitioner has failed to prove that $1,334 was an ordinary and necessary expense of petitioner's business in 1945. Traveling expenses: During 1945, M. L. Rose spent two weeks out of town on petitioner's business to handle the sale of the Paso Robles Hotel. Four persons assisted him in the work; petitioner paid their expenses and Rose's expenses. Petitioner incurred and paid business travel expenses in the amount of $800 in 1945. Christmas expenses: Petitioner made business Christmas gifts in cash during 1945 to its employees, to employees of the building in which petitioner's office was located, and to clients, customers and others in the total amount of $125. Attorney's fees: During 1945, petitioner paid attorney's fees of $150 to D. Freidenrich for his services. This expense was a business expense. Petitioner has failed to prove that it made a further payment of $27 in 1945 for legal fees. Lease cancellation: Property which was under lease was sold during the year 1945; petitioner acted as agent in the transaction. Under the terms of the existing lease, the lessee had deposited $100 with the lessor to be used *293 as the last month's rent for the property. The original owner-lessor failed to pay this $100 to the purchaser of the property. When the purchaser demanded it, petitioner paid her $100 rather than go to the trouble of a lawsuit to recover it from the seller. The payment of $100 was an ordinary and necessary business expense in performance of petitioner's business during 1945. Glass replacement: Petitioner paid $63.45, on April 17, 1945, for the repair and replacement of glass, under its agreement with the purchaser of the Palomar Hotel (referred to above) to put the property in a resalable condition. The expenditure was an ordinary and necessary business expense. Automobile repair: In 1945, M. L. Rose, while in pursuit of petitioner's business, and while driving an automobile, had an automobile accident. While driving on the wet pavement of one of the bridges across San Francisco Bay, the automobile which Rose was driving skidded over into the opposing line of traffic and collided with automobiles causing damages to them. Petitioner employed a lawyer who advised petitioner to settle the claims of those whose automobiles were damaged. Petitioner paid $407 in 1945 in settlement of *294 the damages claims. Petitioner had no insurance to cover the expenditure and was not in any other way compensated. Petitioner sustained a loss of $407 in 1945 which was not compensated by insurance or otherwise. C. Bad Debt Loss - 1947 In 1946, a client of the petitioner, Fred Sutton, was a member of a partnership which operated a restaurant and bar known as London Club, located at 60 Geary Street. There was one other partner, Harry Leontos, Leontos wanted to sell his interest in the partnership and a State liquor license which stood in his name. Edward J. Boscoe is the son-in-law of petitioner's manager, M. L. Rose. Boscoe, in April of 1946, wanted to purchase Leontos' interest in the partnership. In April of 1946, Boscoe paid Leontos $15,000. Leontos departed and, thereafter, was not associated with anyone in the operation of London Club. On May 17, 1946, Boscoe filed an application with the California Board of Equalization for transfer of two liquor licenses, an on-sale license and an off-sale license, which stood in the name of Leontos. Leontos signed the application as "transferor." The application was granted in July of 1946, and, thereafter, Boscoe owned the on-sale *295 and off-sale general liquor licenses at 60 Geary Street. Subsequently, Boscoe sold both licenses. He sold the on-sale license to Olga Carmody on December 27, 1948 for about $7,000, of which amount he received $6,500 in cash, but was required to deposit a surety bond for $3,500 with the California Board of Equalization. Also, Boscoe was required to deposit the proceeds with his lawyer. He transferred the off-sale license to Patrick Buckman on or about September 17, 1946. At the time Boscoe paid Leontos $15,000 no formal steps were taken and no written agreements were executed by which Boscoe was assigned Leontos' interest in the partnership, and Sutton and Boscoe did not enter into a written partnership agreement. However, Sutton and Boscoe discussed the matter of Boscoe's becoming a partner. Later, Boscoe claimed that he never became a partner, and Sutton, in a sworn statement on May 3, 1949, stated that the question whether Boscoe had become his partner in London Club was allegal question. In April and May of 1946, Boscoe advanced $25,500 to Sutton to use in the operation of London Club. Of the $25,500, Boscoe had $15,500, which he advanced to Sutton during April. He and Sutton *296 discussed with M. L. Rose and Ella Rose the possibility of obtaining an additional $10,000. A decision was made that M. L. Rose Company, the petitioner in this proceeding, would advance $10,000. In May of 1946, petitioner advanced $10,000 to Boscoe, to be advanced to London Club. Boscoe advanced $10,000 to Sutton for London Club's operations in May, 1946. Boscoe discovered that the financial condition of London Club was very bad and he did not participate in the conduct of the business. In December of 1947, London Club ceased doing business. Sutton filed an involuntary petition in bankruptcy, and a trustee in bankruptcy was appointed. The referee in bankruptcy, at some undisclosed time, issued an order restraining Boscoe from disposing of the liquor license of which he was the then registered owner, but, later, a stipulation was entered into whereby Boscoe was authorized to sell the liquor license with the understanding that the proceeds would be retained by his attorney pending further order of the court. This agreement related to the on-sale general license which Boscoe sold to Olga Carmody in 1948. Boscoe filed a creditor's claim for $25,500 against Fred Sutton, bankrupt, *297 doing business as London Club. The claim included the $10,000 advanced by petitioner to Boscoe. No part of the claim has been paid by the trustee in bankruptcy. Other creditors' claims were filed in the bankruptcy proceeding. On February 20, 1947, Boscoe and Sutton entered into a 90-day written agreement, under which Sutton agreed to pay Boscoe $25,700 within 90 days. Sutton did not pay Boscoe any part of the $25,700 stated in the agreement. Petitioner has not received repayment of any part of the sum of $10,000 which it advanced to Boscoe in May, 1946. Sutton, doing business as London Club, was insolvent in 1947. On March 26, 1948, Sutton testified in a bankruptcy hearing before a referee that Boscoe loaned him $25,000, and that Boscoe did not have anything to do with operating London Club. No final determination has been made in the bankruptcy proceeding as to whether Boscoe was a part-owner of London Club, or a creditor. Petitioner did not file a creditor's claim against Sutton in the bankruptcy proceeding. Petitioner, in 1946, loaned $10,000 to Boscoe. The debt became worthless in 1947. D. Fraud Penalty No parts of the income tax, declared value excess profits *298 tax, and excess profits tax deficiencies for 1944 are due to fraud with intent to evade tax. No parts of the income tax and declared value excess profits tax deficiencies for 1945 are due to fraud with intent to evade tax. Opinion The questions are considered, for convenience, under four groups. Each question is one of fact under which petitioner has the burden of proof with the exception of the fraud penalty issue under which the respondent has the burden of proof. The petitioner failed to keep adequate books or accounting records during the taxable years. Testimony relating to some of th items in dispute is vague and in some instances, is uncorroborated. The issues to be decided are: (A) Whether in the years 1944 and 1945 petitioner received income, consisting of commissions and fees in five real estate transactions, which it did not include in income in its returns for 1944 and 1945. (B) Whether petitioner is entitled to deductions in 1944 and 1954 for various alleged ordinary and necessary business expenses and loss. (C) Whether petitioner made a loan of $10,000 which became worthless in 1947. (D) Whether all or any part of the deficiencies for the years 1944 and 1945 are *299 due to fraud with intent to evade tax. A. Commissions and Fees (1) The Davenport transaction. The purchaser in this transaction was unable to raise sufficient money to meet the entire down payment of $30,000 for the purchase. She had $24,500 to apply to the down payment and needed an additional $5,500. The seller agreed to go through with the sale if the purchaser would undertake to pay petitioner its commisssion which amounted to $4,625. Petitioner loaned the purchaser $5,500 which was deposited in escrow along with funds of the purchaser amounting to $24,500. Petitioner was paid $4,625 from the escrow account which it treated as partial repayment of its loan. We are satisfied that petitioner did not receive any income in 1944 in this transaction, and have found that the sum of $4,625 did not constitute a commission. Petitioner reports income on the cash basis. As late as November 1952, petitioner had not received a further payment which would constitute its commission. The arrangement whereby, in 1944, petitioner received a repayment of part of its advance was entered into so that the technical requirements of a closing of the sale would be met. It is held that the respondent *300 erred in including $4,625 in petitioner's income for 1944 as a commission. (2) The Palomar transaction. Petitioner received a commission in 1944 in the amount of $3,125 from the sale of the Palomar Hotel. However, when the property was turned over to the buyer it was in such poor condition that the buyer refused to take possession and threatened to try to have the sale set aside. Petitioner made repairs and replacements at its own expense so that the purchaser would be satisfied and take possession. The amounts expended by petitioner during 1944 exceeded the amount it had received as commission. Petitioner did not include the commission in its income for 1944. Also, it did not take any loss deduction for the amounts expended in repairing the property. Admittedly, the method of handling this transaction was improper. No doubt, petitioner's failure to keep proper accounting records explains the improper treatment of the matter in petitioner's income tax return. Nevertheless, under the facts, no income from this transaction was realized. It is held that the respondent erred in including $3,125 in petitioner's income for 1944. (3) The Maryland transaction. The petitioner has *301 failed to prove that it did not receive a commission of $1,750 in 1944 for its services in the Maryland Hotel transaction. Petitioner argues that, since the contract made no provision for a commission, it would not have been able to enforce payment of a commission under California law. The argument is without merit. The respondent's determination that petitioner received $1,750 in 1944, is prima facie correct. The memorandum book of M. L. Rose recorded the receipt of $1,750 in July, 1944, as a commission. M. L. Rose offered as an explanation of the entry in the book that the question mark appearing after the amount meant that petitioner did not receive the fee during 1944. We are unwilling to believe petitioner's explanation without corroboration. Receipt of the commission was noted in a record of petitioner and no evidence has been presented to establish that the item was not received in 1944. It is held that petitioner has failed to sustain its burden of proving that it did not receive the $1,750 as a commission during 1944. Respondent's determination is sustained. (4) The McAlpin Hotel transaction. During the year 1945, petitioner received a commission in the amount *302 of $2,332.50 in connection with the sale of furniture and fixtures in the McAlpin Hotel. It did not include this amount in its 1945 income. Petitioner's manager testified that this amount was not included in income for 1945 because of an understanding which existed between petitioner and the purchasers to the effect that until such time as the purchasers were satisfied with the transaction petitioner would not be entitled to its commission. Petitioner asserts that the amount in question was turned over to the purchasers, after petitioner received it, and that it was not until 1946 that petitioner received the sum of $2,332.50 from the purchasers. We are unable to believe petitioner's contention. The purchasers did not testify about the matter. Petitioner has failed to present adequate evidence in support of its contention. It is held that petitioner has failed to prove that the $2,332.50 which it received in 1945 did not constitute income in 1945. Respondent's determination is sustained. (5) The Russell transaction. During 1945, petitioner received a commission in the amount of $1,280. Only $900 of this amount was reported in petitioner's return for 1945. Petitioner contends *303 that the commission in question amounted to only $900, and that $380 was returned to Miss Russell by payment of her hospital expenses. It may be true that certain hospital expenses of Miss Russell were paid by petitioner. However, petitioner has failed to sustain its burden of proving that the amount received as a commission in this trasaction was less than $1,280. The contract provided that petitioner's commission would be $1,280, and petitioner received that amount in 1945. It follows, necessarily, that $1,280 is includible in petitioner's income for 1945. At best, petitioner merely loaned $380 to Miss Russell, or made a gift of that amount. But such use of part of the commission does not relieve petitioner from having to report in its income the entire amount of the commission. It is held that the respondent properly included $380 in petitioner's income for 1945. B. Deductions - 1944, 1945 For 1944, petitioner has claimed deductions in its return and petition totalling $6,919.93, of which the respondent has allowed and conceded deductions of $4,393.53. The petitioner has abandoned, on brief, claims for deductions totalling $845.71. There remain in issue the following claimed *304 deductions: Telephone expense
$ 40.80
Business promotion & travel
810.00
Automobile expenses
325.69
Public stenographers
440.00
Business Christmas gifts
105.00
$1,721.49
For 1945, petitioner has claimed deductions in its return and petition totalling $18,302.18, of which respondent has allowed deductions of $12,739.23, and petitioner has abandoned items totalling $2,122, so that the remaining deductions in issue total $3,440.95, as follows: Entertainment
$1,334.00
Travel expenses
1,000.00
Business Christmas gifts
359.50
Automobile repairs, wreck
407.00
Attorney's fees, Freidenrich
177.00
Refund, lease cancellation
100.00
Replacing glass
63.45
$3,440.95
The petitioner has the burden of proving that each item of alleged expense is deductible, the amount of the allegedly paid expense, and the year of payment. Petitioner reports its income on the cash basis. Therefore, petitioner must prove payment of the amount in the year for which the deduction is claimed. Upon the evidence it has been found that the following amounts were paid in 1944, that the payments were for the expenses listed, and that the amounts are deductible *305 as ordinary and necessary business expense: 1944
Telephone expense
$ 40.80
Business promotion, travel and auto-
mobile expenses
500.00
Business Christmas gifts
60.00
Public Stenographers
375.00
Total
$975.80
Deductions claimed for business promotion, travel, automobile expenses, business Christmas gifts, and public stenographers in the amount of $745.69 are disallowed because petitioner has failed to prove either that the total amounts claimed were paid in 1944, or that, if paid, the total claimed, above what we have allowed, was ordinary and necessary business expense. Upon the evidence it has been found that the following amounts were paid in 1945, that the payments were for the items listed, and that the amounts are deductible: 1945
Travel expense
$ 800.00
Business Christmas gifts
125.00
Attorney's fees
150.00
Lease refund
100.00
Glass repair
63.45
Automobile accident
407.00
Total
$1,645.45
The deductions claimed which we conclude must be disallowed because petitioner has failed to prove either that payment of the alleged expense was made in 1945, or that the alleged expense was ordinary and necessary business *306 expense are as follows: Entertainment, $1,334.00; travel, $200; Christmas gifts, $234.50; attorney's fees, $27; total, $1,795.50. The petitioner did not keep adequate books and records for 1944 and 1945. It had no bank account, and, consequently, it could not produce cancelled checks in support of the deductions claimed for 1944 and 1945. The expenses in dispute were paid in cash. Receipts were not produced for all of the alleged expenditures. Petitioner relied largely upon the testimony of its manager, M. L. Rose. In some instances, he made estimates and relied upon his memory. In this situation petitioner has failed to meet its burden of proof with respect to many of the claimed deductions, and for failure of proof, many are disallowed. On the other hand, the record supports certain claimed deductions and, under the rule of Cohan v. Commissioner, 39 Fed. (2d) 540, it has been found that certain business expenses were incurred and paid in 1944 and 1945 in the amounts which have been set forth in the Findings of Fact. In applying the rule of the Cohan case, we have kept in mind the admonition that the inexactitudes are of petitioner's own making. Two of the items of *307 deduction claimed for 1945 require special comment, the deduction claimed for alleged entertainment expense and the deduction claimed for the expenses paid as the result of an automobile accident. Mrs. Boscoe is the daughter of M. L. Rose. The petitioner is obliged to establish that the extent to which the boat which was purchased and repaired in 1945 was, during that year, used for personal purposes, or for business purposes, and, also, the useful life of the boat which may have been for more than one year. The issue is a complicated one. Petitioner has failed to establish that all of $1,334 constitutes a business expense for 1945, assuming the boat was used entirely for business entertainment. Furthermore, petitioner failed to prove what percentage of the total use of the boat in 1945 was for business entertainment, and what percentage was for personal use. The entire amount of $1,334 is disallowed as a deduction for failure of proof. We are satisfied from the evidence presented that in 1945 petitioner's manager was in an automobile accident while in pursuit of petitioner's business; that petitioner paid $407 in 1945 to satisfy damages claims; and that for the expenditure, petitioner *308 was not compensated by insurance, or otherwise. The expenditure, however, represents a loss. It is held that petitioner is entitled to a loss deduction under section 23 (e) of the Code. With respect to the claimed deduction of $100 refunded to a purchaser of property under a lease, we are satisfied from the evidence that petitioner made the payment in 1945, and that it was a business expense. It is held that the respondent erred in disallowing this deduction for 1945. It is held, upon the evidence, that petitioner, in 1945, paid $63.45 for replacement of glass; that the expenditure by petitioner was necessary in the Palomar transaction; and that the expense was a business expense. C. Bad Debt Loss - 1947 Petitioner, in its return for 1947, deducted $10,000 as a bad debt loss. Respondent disallowed the deduction because petitioner had failed to establish that the alleged loan was made by the corporation. The question under this issue is limited to the point whether a loan in the amount of $10,000 was made by petitioner in 1946. If a loan was made of $10,000 by petitioner, there is no question presented about whether it became worthless in 1947. That question is not argued *309 on brief by respondent, and the Commissioner in his deficiency notice did not determine that the alleged loan did not become worthless in 1947. Therefore, it is understood that if there was a loan, it became worthless in 1947. However, we are satisfied that a loan of $10,000 was made by petitioner in 1946, and that the indebtedness became worthless in 1947, and findings to that effect have been made. The petitioner has met its burden of proof under this issue. Respondent's determination in disallowing a bad debt loss deduction in 1947 is overruled. The situation presented under this issue is a complicated one. We have considered all of the aspects of the situation. The evidence shows, after all of the evidence is weighed, that petitioner, in 1946, loaned $10,000 to Boscoe. We recognize that the testimony of M. L. Rose contains contradictions but, also, it seems clear to us that his grasp of the complicated transactions was far from clear. Other evidence overcomes the confusion of M. L. Rose, and supports the finding that petitioner made a loan to Boscoe. We cannot find that petitioner loaned the $10,000 to Sutton. It did not file a creditor's claim against Sutton in the bankruptcy *310 proceeding. It is clear that when petitioner advanced $10,000 to Boscoe, it was understood that Boscoe would use the money by advancing it to Sutton, but, nevertheless, the transaction involving $10,000 was between petitioner and Boscoe. Boscoe is the person who filed a creditor's claim against Sutton, and his claim was for $25,500, the total amount which he advanced to Sutton. It is immaterial how Boscoe obtained all of the $25,500 he advanced to Sutton. He may have borrowed from others, as well as petitioner, in getting together the total amount of $25,500. We are satisfied that petitioner did not become a partner in London Club, and that it did not purchase, for $10,000, part of an alleged partnership interest of Boscoe. Whether Boscoe became a partner in London Club is doubtful, but all of that is immaterial. The evidence establishes that petitioner advanced $10,000 to Boscoe as a loan. From all of the record relating to this issue, we have found that the indebtedness became worthless in 1947. It is held that petitioner is entitled to a deduction of $10,000 in 1947 as a loss from a worthless debt. D. Fraud Penalty - 1944, 1945 Originally, respondent determined 5 per *311 cent negligence penalties under section 293 (a), but he abandoned his claim for these penalties in his amended answer. On brief, respondent does not mention the 5 per cent negligence penalties. It appeared to be understood at the trial of this case, that respondent no longer made claim for negligence penalties. The respondent has the burden of proving that parts of the deficiencies in taxes for 1944 and 1945 are due to fraud with intent to evade tax under section 293 (b). We conclude that he has failed to meet this burden of proof. Upon the whole record, it has been found that no parts of the deficiencies in taxes for 1944 and 1945 are due to fraud with intent to evade tax. Petitioner failed to keep adequate and complete accounting records. We think this constituted negligence. But negligence is not the equivalent of fraud. Petitioner omitted from income some items of commissions, but other items which, also, were not included in income were properly excluded. Petitioner's manager, in his testimony, demonstrated carelessness of a type which must be exceedingly troublesome to any person having the task of preparing or auditing petitioner's returns. But the evidence does not *312 establish that petitioner, with fraudulent intent to evade tax of petitioner, was careless to the decree of fraud, because of the carelessness of Rose. Deductions for 1944 and 1945 were taken which could not be substantiated. Nevertheless, in this case, the taking of such deductions is not tantamount to fraud. Respondent has allowed many deductions which, at first, he denied. Petitioner's failure to retain receipts, and to keep accurate, adequate, and complete accounting records of payments of expenses was negligent but did not constitute fraud with intent to evade tax. Decisions will be entered under Rule 50. Footnotes
*. By amendment to his answer, the respondent made claim for 50% additions to the deficiencies under section 293(b)↩.
**. The petitioner failed to file an excess profits tax return for 1944 within the time prescribed by law.↩